IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF FREEDOM MARINE SALES, LLC, AS OWNER, and FREEDOM BOAT CLUB, LLC, AS OWNER PRO HAC VICE, OF THE M/Y FREEDOM LX, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION NO.: 4:25-cv-74 |

**ORDER**

Plaintiffs Freedom Marine Sales, LLC, and Freedom Boat Club, LLC, as owner and owner pro hac vice, respectively, of the vessel M/Y FREEDOM LX, initiated this limitation of liability proceeding by filing a Verified Complaint claiming exoneration from or the benefit of limitation of liability for all losses, damages, injuries, death, or destruction allegedly resulting from an incident involving the vessel that occurred on October 19, 2024, which is referred to more specifically in the Complaint. (Doc. 1.) The Complaint alleged that Plaintiffs' interests in the value of the vessel at the termination of the voyage and pending freight did not exceed the sum of $57,000 and that they were "offer[ing] an ad interim stipulation of value in the amount of . . . $57,000[], plus interest at 6% annum." (Doc. 1, p. 4.)

In support of the Complaint, Plaintiffs filed an "Affidavit of Value" and an "Ad Interim Stipulation" for costs and value. (See docs. 1-2 & 1-3.) In the Affidavit of Value, a marine surveyor opined that the vessel's value after the casualty was $57,000. (Doc. 1-2, p. 1.) However,

the survey report attached to the affidavit stated that the valuation of the vessel after the incident was **$57,500** ($500 more than what was stated in the affidavit and in the Complaint). (Id. at p. 4 (emphasis added).) As for the Ad Interim Stipulation, it stated that the valuation was $57,000, and that Plaintiffs' surety "undertakes the sum of . . . $57,000.00[] and interest of 6% per annum and will file in this proceeding a letter of undertaking as attached hereto as Exhibit 'A' in the amount of . . . $57,000.00[] plus 6% interest per annum from the date hereof." (Doc. 1-3, p. 2.) The attached Letter of Undertaking, however, states that "the undersigned underwriter agrees without prejudice to pay and satisfy such judgment up to and not exceeding **$13,500.00**, together with costs and interest at the rate of 6% per annum . . . ." (Id. at p. 4 (emphasis added).) On the next page, the Letter of Undertaking refers to the amount as **$57,500** (which is $500 more than alleged in the Complaint and the Ad Interim Stipulation). (Id at p. 5.)

Due to these discrepancies regarding the alleged value of the vessel and the amount of the surety, Plaintiff has recently filed (1) an Amended Complaint, (doc. 3); (2) an "Amended Filing of Letter of Undertaking" (along with a copy of an amended Letter of Undertaking), (doc. 4); and (3) a *second* "Amended Filing of Letter of Undertaking" (which also included a copy of a *second* amended Letter of Undertaking), (doc. 5).

While the original Complaint contained 17 paragraphs and a prayer for relief section, the Amended Complaint contains only two substantive paragraphs, the material portions of which state that: "Due to a scrivener's error, Plaintiffs mistakenly listed the value of the Vessel after the casualty as Fifty-Seven Thousand and 00/100 Dollars ($57,000.00)[, while t]he accurate value of the Vessel after the casualty is Fifty-Seven Thousand and Five Hundred and 00/100 Dollars

2

($57,500.00)," and "Plaintiffs herewith amend their Complaint to clarify that the value of the Vessel after the casualty is Fifty-Seven Thousand and Five Hundred and 00/100 Dollars ($57,500.00), not Fifty-Seven Thousand and 00/100 Dollars ($57,000.00), as originally plead."[1] (Doc. 3, p. 1.) Attached thereto is a "Supplemental Affidavit" of a marine surveyor clarifying that his previous affidavit listed the value of the vessel as $57,000 when in fact it was actually $57,500. (Doc. 3-1.)

In the first-filed "Amended Filing of Letter of Undertaking," Plaintiffs explain that the Letter of Undertaking they previously filed (as an exhibit to the Ad Interim Stipulation), offered an incorrect amount of security due to a scrivener's error and that they have attached a revised Letter of Undertaking to show that Plaintiffs "are prepared to offer the full value of the Vessel after the casualty described in the amount of Fifty-Seven Thousand Five Hundred and 00/100 Dollars ($57,500.00), plus 6% interest." (Doc. 4.) Unfortunately, the amended Letter of Undertaking attached thereto (dated April 9, 2025), appears to include a new (different) scrivener's error, as it states that "the undersigned underwriter agrees without prejudice to pay and satisfy such judgment up to and not exceeding *$75,500.00*, together with costs and interest at the rate of 6% per annum . . . ." (Doc. 4-1, p. 1 (emphasis added).)

Later the same day, Plaintiff filed a second "Amended Filing of Letter of Undertaking." Surprisingly, this one made no reference to the prior filing by the exact same name nor did it

---

[1] The Court notes that the "Amended Complaint" does not allege anything concerning the Ad Interim Stipulation, much less does it specifically address the fact that the original Complaint stated that Plaintiffs were offering an Ad Interim Stipulation of value in the amount of $57,000 (rather than $57,500) plus interest. Additionally, Plaintiffs have not filed a revised Ad Interim Stipulation; the original Ad Interim Stipulation—which is the sole version that has been filed with the Court—refers to and concerns a valuation of $57,000 (not $57,500, which Plaintiffs now claim is the correct amount).

acknowledge the error in the prior revised Letter of Undertaking. (Doc. 5.) Similar to the prior filing, however, it stated that, "[a]s reflected by the attached Revised Letter of Undertaking, Plaintiffs show that they are prepared to offer the full value of the Vessel after the casualty described in the amount of Fifty-Seven Thousand Five Hundred and 00/100 Dollars ($57,500.00), plus 6% interest." (Doc. 5.) The third time was apparently a charm for Plaintiffs, as this second revised Letter of Undertaking does state that "the undersigned underwriter agrees without prejudice to pay and satisfy such judgment up to and not exceeding $57,500.00, together with costs and interest at the rate of 6% per annum." (Doc. 5-1, p. 1.)

"As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Can., 647 F.2d 1365, 1370 n.6 (11th Cir. 1982). However, "[m]ultiple piecemeal complaints that reference one another create confusion and prove to be unwieldy." Ruf v. Wells Fargo Bank, N.A., No. 4:18-cv-1942019 WL 13217239, at *1 (S.D. Ga. Jan. 14, 2019). This same logic applies to the "multiple piecemeal" revised exhibits to the complaint. This is especially so where, as here, the piecemeal filings directly relate to a major focus—and what could be an area of material dispute—in the case (here, that being the alleged value of the Vessel in a limitation of liability proceeding). The Court finds it necessary to require Plaintiffs to make it clearer on the docket exactly which document(s) they are relying on to support their limitation of liability proceeding (and whether they intend to continue to rely on the original version of the Ad Interim Stipulation, which is the only one that has been filed with the Court, (see doc. 1-3)). To this end, Plaintiffs are **DIRECTED** to file a single comprehensive Amended

Complaint—along with the most up-to-date versions of any and all exhibits and other documents that are referred to therein—within **FOURTEEN (14) DAYS** from the date of this Order. The Amended Complaint should not reference or incorporate the prior pleadings.

**SO ORDERED**, this 1st day of May, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA