**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF:<br><br>FREEDOM MARINE SALES, LLC, AS OWNER, and FREEDOM BOAT CLUB, LLC, AS OWNER PRO HAC VICE, OF THE M/V FREEDOM LX,<br><br>Petitioners,<br><br>***<br><br>CHARLES BARRON,<br><br>Respondent/ Third-Party Plaintiff,<br><br>v.<br><br>FREEDOM MARINE SALES, LLC, and FREEDOM BOAT CLUB, LLC,<br><br>Third-Party Defendants,<br><br>***<br><br>FREEDOM MARINE SALES, LLC, and FREEDOM BOAT CLUB, LLC,<br><br>Fourth-Party Plaintiffs, | ) | CV425-074 |

v. )
)
LULU HE, )
)
Respondent/ )
Fourth-Party )
Defendant. )

## ORDER

Before the Court are Charles Barron's Motion to Compel Discovery, doc. 71, to which Freedom Marine Sales, LLC, and Freedom Boat Club, LLC (collectively "Freedom Marine") responded, doc. 100, Barron replied, doc. 109, and Freedom Marine sur-replied, doc. 111; Freedom Marine's Motion for Protective Order, doc. 68, to which Barron responded, doc. 102, and Freedom Marine replied, doc. 107; and Charles Barron's Motion for Protective Order, doc. 69, to which Freedom Marine responded, doc. 101, and Barron replied, doc. 108.[1] For the reasons discussed below, Barron's Motion to Compel is **GRANTED**, **in part** and **DENIED**, **in part**, doc. 71, Freedom Marine's Motion for Protective Order is **DENIED,** doc. 68, and Barron's Motion for a Protective Order is **GRANTED**, doc. 69.

[1] Also before the Court is Barron's Consent Motion for Leave to File Consolidated Brief. Doc. 70. For good cause shown, Barron's Consent Motion for Leave to File Consolidated Brief is **GRANTED**. Doc. 70. The Court has considered the briefs as filed. *See* docs. 71 & 100.

## I. Background

On May 12, 2025, Freedom Marine filed a Second Amended Verified Complaint for Exoneration from or Limitation of Liability pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.*, claiming the right of exoneration from or limitation of liability for any and all claims arising from any alleged injuries or damages sustained during an incident on navigable waters near Wassaw Beach on or around October 19, 2024 ("the Voyage"), involving the motor yacht FREEDOM LX (the "Vessel"). *See generally* doc. 9. Freedom Marine also moved for the Court to approve and accept its Ad Interim Stipulation of value for the Vessel to be $57,500.00, and to issue an injunction to restrain the commencement or prosecution of claims during the pendency of this case. Doc. 10.

On May 20, 2025, the Court entered its Order approving Freedom Marine's Ad Interim Stipulation, restraining prosecution of claims, and issuing notice of the complaint for exoneration from or limitation of liability. Doc. 12. The Court's Order and Notice directed all potential claimants to file and serve their claims in this proceeding on or before June 20, 2025. *Id.* at 2. On June 13, 2025, Barron filed an Answer to

Freedom Marine's Amended Complaint as well as a Claim under Supplemental Rule F(5) of the Federal Rules of Civil Procedure. Docs. 14 & 15.

Barron's Answer raises nineteen affirmative defenses, including that Freedom Marine is not entitled to exoneration or limitation of liability on the grounds that it and its employees and agents' negligence caused Barron's injuries or had privity and knowledge of the events and conditions that caused those injuries, including alleged defects or unseaworthiness of the Vessel. Doc. 14 at 5-6. In his Rule F(5) Claim, Barron further alleges that Freedom Marine breached its duty of care by providing him with a pontoon boat that was defective despite the opportunity to discover the defect upon a reasonable inspection, and that Freedom Marine failed to adequately train him before allowing him to operate the pontoon boat and failed to provide proper resources to its own dock staff who failed to inform Barron of any risks reasonably expected during the voyage. Doc. 15 at 4-5.

Freedom Marine filed its Answer to Barron's Claim and asserted a Fourth-Party Complaint against Lulu He alleging negligence and contractual indemnity. Doc. 21. He answered and filed a crossclaim

against Freedom Marine, doc. 30, which Freedom Marine answered, doc. 37. The parties then engaged in discovery. *See, e.g.*, doc. 39, doc. 43. During discovery, disputes arose between the parties that required the Court's involvement, *see* doc. 51, and the Court authorized the above-referenced discovery Motions, doc. 55 at 2.[2]

## II. Barron's Motion to Compel

The Court first addresses Barron's Motion to Compel Discovery, which asks the Court to compel Freedom Marine to produce material spanning eight categories: "(I) other incidents, (II) employee files and related information, (III) acquisition and operational documents relating to Brunswick Corporation, (IV) insurance claim and damage records, (V) a further inspection of the vessel, (VI) testimony from [a] properly prepared corporate representative, (VII) testimony from Brunswick Corporation, and (VIII) certain employee communications." Doc. 71 at 7.

In maritime tort cases, Rules 26 and 37 of the Federal Rules of Civil Procedure govern the contours of discovery. *See* Fed. R. Civ. P. Supp. AMC R. A(2). Principally, Rule 26 sets forth the general scope of

---

[2] The Court held a second informal discovery dispute conference with the parties on July 7, 2026. *See* doc. 98. The discovery issues raised during that conference are not addressed in this Order, but will be addressed by the Court during the October 26, 2026, hearing, *see* doc. 117.

discovery and permits the parties to obtain discovery over "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1); *see also Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) ("The Federal Rules of Civil Procedure strongly favor full discovery whenever possible."). Relevancy is "construed broadly" in this context "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal quotations omitted)). Proportionality is determined by the Court's consideration of factors specific to the case, including the amount in controversy, the parties' access to the relevant information, the importance of the material in resolving the claims, and the burden of the proposed production weighed against its potential value. Fed. R. Civ. P. 26(b)(1). Additionally, the Court retains the discretion to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from

some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Rule 37 provides the mechanism for the Court when parties cannot agree on the scope of discovery, and Court-ordered compulsion is requested. Fed. R. Civ. P. 37(a)(3)(B) ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."). The party moving to compel bears the initial "burden of showing the information is relevant." *Haley v. Delta Airlines, Inc.*, 2023 WL 2125995, at *2 (N.D. Ga. Jan. 20, 2023) (citing *Mann v. Se. Railcar, Inc.*, 2018 WL 11374881, at *5 (M.D. Ga. Oct. 26, 2018)). Once that threshold burden is met, the party resisting discovery must "show specifically how the objected-to request is unreasonable or otherwise unduly burdensome." *Brannies v. Internet ROI, Inc.*, 67 F. Supp. 3d 1360, 1362 (S.D. Ga. 2014) (internal quotation and citation omitted); *see also Colony Ins. Co. v. All Cities Enters., Inc.*, 2019 WL 5850548, at *3 (M.D. Ga. June 11, 2019) ("Although the party resisting discovery must show why discovery should

be denied, 'the moving party has the burden of showing the information is relevant and necessary.'" (quoting *Williams v. Art Inst.*, 2006 WL 3694649, at *3 (N.D. Ga. Sept. 1, 2006)).

**a. Other Incidents**

Barron's Request for Production No. 7 in its First Requests for Production of Documents to Freedom Marine sought "[a]ll documents relating to all accidents, incidents, injuries, or damage arising from or relating to the use of a vessel by any person or use or enjoyment of any premises owned by, operated by, maintained by, or otherwise under the control of [Freedom Marine] or any person acting at their direction or on their behalf." Doc. 57-4 at 7. Freedom Marine responded that the request was "overly broad and unduly burdensome" and "disproportionate to the needs of discovery. . . ." Doc. 71-21 at 4. Barron's Motion to Compel and later reply brief articulate a narrowed request: documentation from January 1, 2020 to October 19, 2025 concerning any incidents with "potential operator error" from Freedom Marine's Georgia, South Carolina, and Florida locations, and nationwide documentation related to all incidents involving pontoon or tritoon vessels. Doc. 71 at 9; doc. 109 at 8. Freedom Marine again objects that the request is overbroad

and seeks irrelevant information because Eleventh Circuit law "shows just how narrow the scope of discoverable information is, because discoverable information should be, at the least, proportionately calculated to secure admissible evidence." Doc. 111 at 9.

Federal Rule of Civil Procedure Rule 26(b)(1) defines proportionality as balancing "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Without further clarity, Freedom Marine states that the incident reports are "far beyond the ambit of admissible evidence, [therefore] the discovery sought is clearly not proportional." Doc. 111 at 9. Yet, Rule 26(b)(1) makes clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."

Additionally, Freedom Marine contends that the documentation sought is irrelevant and burdensome to disclose for two reasons: first, because the documents Barron requests exceed the scope of the claims, and second, because the production of the documents would be too

burdensome. Doc. 100 at 10-21. Addressing Freedom Marine's first argument, the merits of Barron's claims, including whether proximate cause was severed, do not bear on the Court's analysis at this stage. *See e.g.*, doc. 100 at 16 ("Rather, Barron's independent and considered decision to cut safety corners to save time and money resulted in his injury. While deeply unfortunate, his decision severs the proximate causation linkage to any alleged prior problem or training issue unrelated to his ultimate decision."). At this stage, Barron need only assert why incident reports from other clubs are relevant to the pending claims, which requires that the incident reports "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge*, 1 F.4th at 1276. Barron has demonstrated why nationwide incident reports are relevant to understanding the corporate-level practices that bear on Freedom Marine's culpability. Doc. 71 at 16. Whether those incident reports are ultimately admissible, or tend to support one party's position over the other, is a question for another day.

Freedom Marine alternatively asserts that Barron's request for nationwide incident reports is unduly burdensome because of the size

and scale of Freedom Marine's operations. Doc. 100 at 18. To support its assertion of burden, Freedom Marine presents the Court with a map of its locations nationwide and clarifies that the database used to store incident reports does not have a location-based search function. Doc. 100 at 19. Based on deposition testimony, Freedom Marine estimates that the database currently stores between 700 and 4,000 incident reports. *Id.* Even assuming the existing reports are closer to 4,000 than 700, Freedom Marine has not demonstrated why searching its database to identify the responsive reports would be unduly burdensome such that otherwise relevant materials ought not be produced. *Brannies*, 67 F. Supp. 3d at 1362.

Because Barron has shown why the incident reports are relevant, and Freedom Marine has failed to explain why production of the reports would be unduly burdensome and unreasonable, Barron's Motion to Compel the production of Freedom Marine's incident reports is **GRANTED**. Doc. 71, in part. Freedom Marine is **DIRECTED** to produce documentation from incidents between January 1, 2020 to October 19, 2025 concerning "potential operator error" from the Georgia, South Carolina, and Florida locations, and nationwide documentation

related to all incidents involving pontoon or tritoon vessels. The Court will afford the parties an opportunity to jointly decide on a schedule for the production of these documents, discussed in more detail below.

**b. Employee Files and Related Information**[3]

Barron's Request No. 16 served on Freedom Marine sought "[a]ll documents constituting the employment file for any of Petitioners' employees, agents, or other persons acting on their behalf or at their direction for any persons involved in the training, instruction, or orientation of Third-Party Plaintiff, his wife, LuLu He, or who had any involvement in the reservation and voyage relating to the Incident." Doc. 71 at 23; *see also* doc. 71-21 at 8. In response, Freedom Marine produced personnel records for some, but not all, of its employees. Doc. 71 at 23; doc. 100 at 22.

Barron moves to compel Freedom Marine to produce the employee files for Maren Arrington, Jonathan Levine, and Max Curtis. Doc. 71 at 23. Freedom Marine objects to Barron's request arguing that the

---

[3] Barron acknowledges that his Motion to Compel this category of documents is beyond the scope of discovery motions authorized by the Court after the informal discovery dispute conference. *See* doc. 109 at 9 n. 5; *see also* doc. 55. Since the matter was fully briefed, for efficiency, the Court will resolve the parties' dispute and excuse any noncompliance with the standard procedure.

withheld employee files are not relevant because the employees were not on the dock on the day of the accident. Doc. 100 at 21-22. But Barron's request is not limited to those employees present at the scene of the accident, but rather an Maren Arrington, "who has been employed in management-level positions since well before the incident, developed and implemented the training directly at issue in this case, and who was in charge of the Club at the time of the incident and who has been central to [Freedom Marine's] post-incident investigation," and Curtis and Levine, who "both have corporate-level knowledge and responsibility [sic] the training policies, procedures, and practices central to Barron's claims . . . ." Doc. 109 at 9.

Therefore, Barron has sufficiently established the relevancy of the three additional employee files. Barron's Motion to Compel the production of those files is **GRANTED**. Doc. 71, in part. Freedom Marine is **DIRECTED** to produce the employee files of Maren Arrington, Jonathan Levine, and Max Curtis. As above, the Court will afford the parties an opportunity to jointly decide on a schedule for the production of these documents, and will permit Freedom Marine to file any

necessary Motion for an order protecting any sensitive employee information, discussed in more detail below.

**c. Acquisition and Operational Documents Relating to Brunswick Corporation**

Next, Barron moves to compel the production of "all documents and communications relating to any acquisition, merger, sale, transfer, or other transaction involving the assets, ownership interests, membership interests, or operations of the club, including but not limited to asset purchase agreements, stock or membership interest purchase agreements, merger agreements, letters of intent, disclosure schedules, representations and warranties, due diligence materials, and all documents exchanged between the parties in connection with the transaction." Doc. 71 at 30 (quoting Request No. 80). Freedom Marine objected to the request as "overly broad, unduly burdensome and disproportionate to the needs of discovery in this case." Doc. 71-21 at 32.

Barron fails to establish how the requested materials are relevant to the present case, instead identifying conclusory and theoretical reasons why the acquisition documents may lead to relevant information. *See* doc. 71 at 30-31. Furthermore, in light of the Court's Order denying Barron's Motion to Modify the Scheduling Order and Motion for Leave to

File First Amended Complaint, production related to Brunswick Corporation's acquisition of the Savannah club is not relevant to any currently pending claims. *See* doc. 105; doc. 71 at 30.

Therefore, Barron's Motion to Compel the production of the asset purchase agreement and due diligence materials is **DENIED.** Doc. 71, in part.

### d. Insurance Claim and Damage Records

Barron also requested "all insurance claims made by [Freedom Marine] for damage to any vessel in the Savannah fleet." Doc. 71 at 33 (quoting Request No. 81).[4] Freedom Marine responded that the request was overbroad, unduly burdensome and disproportionate to the needs of the case. Doc. 71-21 at 32. Barron now moves to compel production, arguing that the documents are relevant to show that Freedom Marine maintained inadequate safety procedures and knowingly permitted vehicles to operate in unsafe conditions. Doc. 71 at 33. Other accidents and related reports, according to Barron, will likely contain relevant

[4] Barron also seeks production of documents responsive to Request No. 7, but that request has already been granted above.

information regarding Freedom Marine's "deficient operational policies." *Id.*

To further articulate why the insurance reports are relevant, Barron references the 30(b)(6) deposition of Nicholas Thomas, the corporate representative for Freedom Marine. Doc. 71 at 33. Barron's understanding of Thomas's testimony is that the insurer, Chubb, required and approved the club's training material and made determinations as to whether a member violated the club's policies. *Id.* ("Here, the requested insurance and related records are additionally relevant because Petitioners' testified that Petitioners' insurer, Chubb, required such training and approved the training material the Club submitted to it for its review before implementing it."). Freedom Marine objects to Barron's interpretation of Thomas's testimony, and instead argues that the insurer only determines coverage, not whether a member has violated a club policy. Doc. 100 at 31. Regardless, Freedom Marine says that the insurance information requested is overbroad. *Id.*

The breadth of insurance claims may be expansive, but Barron has articulated a theory of relevancy, and Freedom Marine has not shown why the request is unreasonable or unduly burdensome. As such,

Barron's Motion to Compel the production of insurance documentation is **GRANTED**. Doc. 71, in part. Freedom Marine is **DIRECTED** to produce documentation of all insurance claims it has made for damage to any vessel in the Savannah fleet. As above, the Court will afford the parties an opportunity to jointly decide on a schedule for the production of these documents, discussed in more detail below.

**e. Further Inspection of the Vessel**

Barron seeks to perform a formal, on-water inspection of the vessel. Doc. 71 at 34. Barron indicates that he was previously able to inspect the vessel on land but has not taken the boat out on the water. Doc. 71 at 34. Freedom Marine argues that an on-water inspection would be dangerous, even going so far as to call it an inherently dangerous activity. Doc. 100 at 37. It specifically calls attention to the 18-month period that the boat has remained idle which creates a dangerous condition for the driver during the inspection. *Id.* at 35-36, 38. Freedom Marine also expresses concern for the boat's engine which may become damaged after use. *Id.* at 36.

Federal Rules of Civil Procedure 26 and 34 govern the procedure and scope of an inspection to be conducted during discovery. Rule 26

allows one party to serve a request on the other "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 26. Rule 34 then sets forth several factors that the court can weigh in determining whether a compelled inspection is warranted. *See* Fed. R. Civ. P. 34 ("If parties differ as to whether an inspection is appropriate, the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.") The decision to permit an inspection falls within the court's discretion. *Id.*

Here, Barron's interest in conducting an on-water inspection outweighs Freedom Marine's speculation that the testing will result in damage to the vessel. Accepting arguendo that the engine will fail or shut off while on the water, Freedom Marine has not demonstrated a danger that would outweigh the truth-seeking value of Barron's proposed inspection. See *Whitesell Corp. v. Electrolux Home Prods., Inc.*, 2016 WL 11257409, at *3 (S.D. Ga. June 28, 2016) (permitting an inspection when

the resisting party did not adequately represent that any potential prejudice or burden may result). Therefore, Barron's Motion to Compel an on-water inspection of the vessel is **GRANTED.** Doc. 71, in part. As above, the Court will afford the parties an opportunity to confer about a schedule for completing this inspection, and any parameters that may govern the inspection, discussed in more detail below.

**f. Rule 30(b)(6) Deposition**

Barron also seeks to compel a second opportunity to conduct a Rule 30(b)(6) deposition because he alleges that the designated corporate representative for Freedom Marine was not adequately prepared. Doc. 71 at 43. Barron claims that the corporate representative, Nick Thomas, was unprepared to testify regarding six of the Rule 30(b)(6) noticed topics. Doc. 109 at 12-18. Freedom Marine responds that a representative need not have perfect memory, and that Thomas was adequately prepared for the deposition. Doc. 100 at 40-41.

Federal Rule of Civil Procedure 30(b)(6) allows a party to depose an entity and requires the entity to designate a person who is capable of testifying on its behalf. First, the deposing party must issue notice to the entity to "describe with reasonable particularity the matters for

examination." Fed. R. Civ. P. 30(b)(6). The deponent must then testify at the deposition regarding "information known or reasonably available to the organization." *Id.* An entity therefore bears the burden of preparing the designee to testify about matters beyond that which is personally known to the witness. *Fuentes v. Classica Cruise Operator Ltd, Inc.*, 32 F.4th 1311, 1321-22 (11th Cir. 2022). But, the "fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation[s]." *Id.* (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012)).

The court in *QBE Insurance Corporation* authored a "*de facto* Bible governing corporate depositions" which outlined the fundamental guideposts of Rule 30(b)(6). 277 F.R.D. at 687. Each party to a 30(b)(6) deposition bears its own responsibility: the designee in preparing to testify as to the noticed topics, and the discovering party in describing the noticed topics with "reasonable particularity." *Id.* at 688 (citing *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008)). A corporation must make a good faith effort to prepare its designee to testify fully and non-evasively regarding the

noticed topics. *Id.* at 689. With that in mind, if a designee "legitimately lacks the ability to answer relevant questions on listed topics and the corporation cannot better prepare that witness or obtain an adequate substitute, then the 'we-don't-know' response can be binding on the corporation and prohibit it from offering evidence at trial on those points." *Id.* at 690 (citing *Fraser Yachts Fla., Inc. v. Milne*, 2007 WL 1113251, at *3 (S.D. Fla. Apr. 13, 2007)).

Here, Barron has not shown that Thomas was so ill-prepared as to warrant a second deposition. The deposition transcript reflects that Thomas responded to each question having adequately prepared to discuss the noticed topics. *See generally*, doc. 71-2. Barron's request borders on a requirement that Thomas have a near encyclopedic recollection of the training policies and events giving rise to the accident, which far exceeds the scope of the rule. *See Fuentes*, 32 F.4th at 1322 (citing *Dapron v. Spire, Inc.*, 329 F.R.D. 223, 227 (E.D. Mo. 2019) (explaining that a deposing party may not demand that a corporate designee be prepared to speak with encyclopedic authority")). Therefore,

Barron's Motion to Compel a renewed 30(b)(6) deposition is **DENIED.** Doc. 71, in part.

**g. Testimony from Brunswick Corporation**

Finally, Barron requests additional time to conduct a non-party deposition of Brunswick Corporation. Doc. 71 at 45. However, on July 21, 2026, the Court denied Barron's Motion to Amend to add Brunswick as a third-party defendant and denied Barron's Motion to Modify the Scheduling Order. Doc. 105. Therefore, Barron's request to conduct further discovery as to Brunswick is **DENIED**. Doc. 71, in part.

**h. Employee Communications**

Barron also seeks production of inter-employee communications over which Freedom Marine has asserted privilege. Doc. 71 at 45. That issue is addressed below.

## III. Freedom Marine's Motion for Protective Order

Freedom Marine moves for a protective order regarding certain communications between its employees in the days following the incident in October 2024. *See generally* doc. 68. Freedom Marine asserts that these communications are privileged corporate messages because they

are protected by the attorney-client privilege and work product doctrines. *Id*. at 6-7.

**a. Attorney-Client Privilege**

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Grand Jury Proceedings 88–9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990) (quoting *In re Grand Jury Subpoena of Slaughter*, 694 F.2d 1258, 1260 (11th Cir.1982) (internal quotations omitted)). The party claiming privilege bears the burden of proving that privilege exists. *United States v. Davita, Inc.*, 301 F.R.D. 676, 680 (N.D. Ga. 2014). Generally, the party claiming privilege must establish that: (1) the holder of privilege is a client; (2) the person to whom communication was made is a member of the bar and that person is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which attorney was informed by the client without the presence of strangers for the purpose of securing legal advice; and (4) the privilege is claimed and not waived by the client. *Id.*

The fact that internal corporate communications are made between clients does not necessarily preclude the application of attorney-client

privilege, though courts have considered the lack of any lawyer involvement in any communication as a factor weighing against a showing of attorney-client privilege. *Davita,* 301 F.R.D. at 681-82. Although communications by non-attorneys are not categorically excluded from attorney-client privilege, they are usually only protected if "those non-attorneys are employed to assist the lawyer in a rendition of professional services." *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1328 (N.D. Ga. 2015) (internal quotation marks and citations omitted). The "ultimate touchstone for application of the privilege . . . is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion." *Davita*, 301 F.R.D. at 682.

First, Freedom Marine asks the Court to affirm its decision to withhold an email sent from Hannah Sherman to Maren Arrington that it says "provided key contractual paperwork, which would be useful for, *inter alia*, defending a lawsuit and evaluating a claim." Doc. 68 at 7. However, after reviewing the email, which was submitted for *in camera* review, the Court does not identify any privileged material because the email merely tells the reader to see the attachments to the email, but

does not include the attached material. Therefore, to the extent Freedom Marine seeks a protective order for the transmittal email, its Motion is **DENIED, in part**, because it fails to demonstrate that the email included any privileged material or any material protected by any other doctrine. Doc. 68.

Second, Freedom Marine moves to protect two communications between Freedom Marine employees and contractors that focus on the impact of the incident on the boat's operations, including a potential litigation hold. No attorneys were involved in either communication, although one communication references a future discussion with a paralegal. Under the principles discussed above, the emails are not privileged. They were not made by, conveyed to, or created at the direction of counsel. Rather, the emails at issue were each sent by a non-attorney, exclusively to other non-attorneys, and there is no evidence that an attorney requested the delivery of the communication. Thus, Freedom Marine has not demonstrated that the communications were made to counsel or at counsel's direction. Moreover, the communications are focused primarily on the business impact of the incident and the resulting litigation hold on a Freedom Marine asset. This is insufficient to warrant

the application of the attorney-cleint privilege. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 796 (E.D. La. 2007) (rejecting protection when communications did not reflect "information gathered by corporate employees for transmission to corporate counsel for the rendering of legal advice."). In sum, Freedom Marine has not demonstrated that the communications at issue are protected by attorney-client privilege.

**b. Work Product**

The above determination does not end the inquiry. The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). To receive work product protection, a document "must be (1) produced by an attorney or her agent and (2) created in anticipation of litigation." *Bibby*, 165 F.Supp.3d at 1323. Because the second factor is dispositive here, the Court will focus on the "in anticipation of litigation" requirement. The "in anticipation of litigation" element contains two related yet distinct concepts, one "temporal" and the other "motivational." *Id.* First, the temporal requirement means that the document must have been prepared before

or during the litigation. Freedom Marine's documents meet this requirement. But, "the temporal element, standing alone . . . is not sufficient. The document or material must also have been prepared *for* litigation and not *for* some other purpose. It is this second, motivational concept that is determinative." *Id.* (internal alterations, citations, and quotations omitted, emphasis in original).

Determining a single motivating purpose behind the creation of a document is often difficult and the work product doctrine reflects this reality. Multi-purpose documents that have both litigation and non-litigation purposes may still receive work-product protection. *Adams v. City of Montgomery*, 282 F.R.D. 627, 634 (M.D. Ala. 2012). The Eleventh Circuit, through the former Fifth Circuit,[5] has adopted a "primary motivating purpose" test that asks whether the primary consideration in the creation of the document was anticipated litigation." *See United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).[6]

---

[5] *Davis* is binding in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[6] Freedom Marine relies on *Mischler v. Novagraaf Grp. BV*, 2019 WL 6135447 (D.D.C. Nov. 19, 2019) to argue that work product applies to the documents at issue here. *See* doc. 68 at 6. However, in *Mischler*, the District Court for the District of Columbia made clear that it was applying the D.C. Circuit's "because of [anticipated litigation]" test that is materially broader than the Eleventh Circuit's "primary motivating

Here, the Court identifies the primary purpose of the communications at issue as a business one; in short, the persons involved seem most interested in the impact of the incident on the continuing operation of the vessel in the face of possible litigation. While the anticipation of litigation and a potential legal hold shaped the communications, the people involved were keenly interested in how the incident would affect the availability of the vessel. Therefore, they are not protected by the work produce doctrine.

Freedom Marine has not borne its burden of demonstrating that the documents at issue are protected by either the attorney-client privilege or work product doctrine. Its Motion for Protective Order is, therefore, **DENIED**. Doc. 68. Freedom Marine is **DIRECTED** to produce the withheld documents. As above, the Court will afford the parties an

purpose" standard. *Id*. at 8. Because the *Mischler* court used a measurably different test to determine whether work-product protection applied, the Court finds it unpersuasive.

opportunity to confer about a schedule for producing these documents, discussed in more detail below.

## IV. Barron's Motion for Protective Order

Barron moves for an Order protecting from production correspondence between his counsel and his wife He's counsel that discuss, analyze, or review any of the issues involved in this proceeding. *See generally* doc. 69. Barron contends that these communications between counsel are privileged from disclosure under common-interest and related doctrines. *Id*. at 6. Additionally, Barron argues that, even if these documents are not privileged, they are not proportional to the needs of the case and are intended to harass. *Id*. at 6-7.

"District courts within the Eleventh Circuit recognize the joint defense agreement under the common interest doctrine and apply it to the same range of communications that are protected under the attorney-client privilege." *Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merill Lynch Pierce Fenner & Smith, Inc*., 2011 WL 3512180, at * 6 (N.D. Fla. July 7, 2011). "To assert the privilege, the party must show: 1) an agreement (though not necessarily in writing) to cooperate through a common enterprise towards an identical legal strategy; 2) the

communications were given in confidence, and the client reasonably understood this; 3) the joint strategy was more than 'merely the impression of one side.'" *Id.* (quoting *Denny v. Jenkins & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004)). As the Northern District of Florida noted, "[t]he weight of authority is that the common interest doctrine extends at least to situations where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.* (internal quotations and citations omitted).

Barron contends that he shares two common interests with He: (1) defeating Petitioners' limitation action and (2) "a significant legal and marital interest in the other not being sued." Doc. 69 at 10, 12. Barron's counsel has provided a sworn declaration stating that all communications sought by Freedom Marine were made to further the parties' common interest and with the express agreement and understanding that such communications would be confidential and subject to common interest privilege. *Id.* at 10.

While these shared interests may exist, as Freedom Marine observes, He has not filed any direct claims against Freedom Marine and the deadline to file a claim has passed. Doc. 101 at 11. Instead, she has filed

a cross-claim against Freedom Marine related to the costs she will incur in defending against Freedom Marine's Fourth-Party Complaint against her and seeking indemnity from Freedom Marine in the event Barron successfully pursued a judgment *against her*. Doc. 30 (He's Answer to Fourth-Party Complaint and Crossclaim). There is no indication that He and Barron share an identical *legal* interest in contesting Freedom Marine's limitation of liability, although He may have personal and financial interests in her husband's claim. Doc. 101 at 11. Nevertheless, this Court has found that the common interest privilege "does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects." *Gold Cross EMS, Inc. v. Children's Hosp. of Ala.*, 79 F. Supp. 3d 1316, 1326 (S.D. Ga. 2015).

The Court is satisfied that Barron has demonstrated a common "substantially similar legal interest" with his wife, He, against their common adversary, Freedom Marine. *Pensacola Firefighters' Relief Pension Fund Bd. of Trs.*, 2011 WL 3512180, at *6. Therefore, his Motion is **GRANTED**. Doc. 69.

## V. Conclusion

In sum, Barron's Motion to Compel is **GRANTED, in part**, and **DENIED, in part**. Doc. 71. Freedom Marine's Motion for Protective Order is **DENIED**. Doc. 68. Barron's Motion for a Protective Order is **GRANTED**. Doc. 69.

In his Motion to Compel, Barron asks the Court to award him fees and costs, "in the event the Court rules in his favor on one or more issues . . . ." Doc. 71 at 45-46. Rule 37 mandates that, if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, "the court must not order this payment if . . . circumstances make an award of expenses unjust." *Id.* In this case, the parties have all vigorously litigated the scope of discovery, and have all won some issues and lost some issues. The Court determines that an award of fees and expenses against Freedom Marine would, under the circumstances, be unjust. Barron's request for proceedings to determine a fee award is, therefore, **DENIED**. Doc. 71, in part.

The parties are **DIRECTED** to confer to determine a jointly proposed schedule to complete the discovery compelled above. They are **DIRECTED** to report the results of that conferral during the hearing set for October 26, 2026. *See* doc. 117.

**SO ORDERED**, this 16th day of October, 2026.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA